UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY FARKAS, M.D., LLC, d/b/a INTERVENTIONAL NEURO ASSOCIATES,<br><br>Plaintiff,<br><br>v.<br><br>GROUP HEALTH INCORPORATED,<br><br>Defendant. | Case No. 16 _____ ( )<br><br>**COMPLAINT** |

Plaintiff Jeffrey Farkas, M.D., LLC, d/b/a Interventional Neuro Associates ("Plaintiff"), by and through its undersigned counsel, hereby alleges for its Complaint against defendant Group Health Incorporated ("GHI" or "Defendant") as follows:

## INTRODUCTION

1. This action arises out of GHI's improper refusal to compensate Plaintiff adequately for the emergency, lifesaving medical services rendered to GHI insureds by Plaintiff.

2. Plaintiff is an industry-leading provider of acute neurological treatment following strokes, brain aneurysms, carotid disease, and vascular problems of the brain, spine, and neck. In accordance with the terms of GHI's health plans, GHI purports to compensate out-of-network providers, like Plaintiff, for services they provide to GHI insureds at a certain percentage of the usual, customary and reasonable rate, as determined by GHI, for such services.

3. As set forth more fully below, notwithstanding the credentials and expertise of Plaintiff's treating physicians and the complexity and urgency of the services Plaintiff provides, GHI has set unreasonably low reimbursement rates for those services. As a result, GHI has inadequately compensated Plaintiff for those services and unjustly enriched itself at Plaintiff's expense.

## PARTIES

4. Plaintiff is a New Jersey limited liability company registered to do business in the State of New York with a principal place of business at 43 Westminster Avenue, Bergenfield, New Jersey 07261.

5. Plaintiff's sole member is a citizen of the State of New Jersey.

6. Upon information and belief, defendant GHI is a New York corporation with its principal place of business at 441 Ninth Avenue, New York, New York 10001.

## JURISDICTION AND VENUE

7. This Court has jurisdiction, pursuant to 28 U.S.C. § 1332, based on the parties' diversity of citizenship and because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

8. Venue is proper in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to this action occurred within the District.

## FACTUAL BACKGROUND

### I. Plaintiff's Practice

9. Plaintiff is a medical services provider comprised of a team of industry-leading neurologists who specialize in acute treatment following strokes, brain aneurysms, carotid disease, and vascular problems of the brain, spine, and neck.

10. Plaintiff's doctors perform major brain surgery in emergency, and often lifesaving, situations.

11. Plaintiff is the *only* neurological practice in Brooklyn, New York whose providers regularly perform the procedures at issue in the instant action.

12.     Plaintiff employs four doctors as well as supporting personnel.  A summary of the doctors credentials is set forth below:

13.     Dr. Jeffrey Farkas, M.D., is board certified in radiology and completed his training in Neuroradiology and Interventional Neuroradiology at Massachusetts General Hospital, a teaching hospital of Harvard Medical School.

14.     Dr. Farkas is one of the most experienced neurointerventional surgeons/interventional neuroradiologists in the northeast United States.

15.     Dr. Ambooj Tiwari, M.D., is board certified in Neurology and Stroke, and completed his Neurology residency and Vascular Neurology fellowship at Detroit Medical Center where he was Chief Resident in Neurology.

16.     Dr. Karthikeyan Arcot, M.D., is a member of the American Academy of Neurology and the Society of Vascular and Interventional Neurology.

17.     Dr. Arcot completed his Neurology residency at Albert Einstein College of Medicine's Montefiore Medical Center, his Vascular Neurology fellowship at The Mount Sinai Hospital, and his Endovascular Surgical Neuroradiology fellowship under the supervision of Dr. Farkas at NYU Lutheran Healthcare.

## II.     GHI Sets Improperly Low Rates for Plaintiff's Services

18.     Plaintiff is a non-participating or out-of-network provider with GHI.

19.     When Plaintiff treats patients who are members or beneficiaries of GHI's health plans, those patients are responsible to pay Plaintiff's charges for the medical services rendered.

20.     If a patient's GHI health plan provides for out-of-network benefits, it is the patient's responsibility to pay Plaintiff in full for the services rendered.  The patient may then submit Plaintiff's bills to GHI for partial reimbursement in accordance with the health plans' terms.

21. Alternatively, the patient may assign to Plaintiff his/her right to reimbursement from GHI. Upon such assignment, Plaintiff is responsible for sending its bills to GHI and obtaining reimbursement from GHI.

22. While the specific terms of GHI's health plans vary, they generally provide that GHI pay a designated percentage of the usual, customary and reasonable rate (the "UCR") for covered medical services provided by out-of-network physicians. That percentage varies from 60% to 90% of the UCR paid to in-network physicians in the same community.

23. In determining the applicable UCR, GHI uses the database promulgated provided by Fair Health, Inc. ("Fair Health").

24. Fair Health, in turn, purports to provide UCRs based on procedure code ("CPT")[1], geographic area and date of service.

25. While GHI has chosen to utilize Fair Health's data, GHI is the ultimate decision maker as to the UCR for a particular service at which it will reimburse out-of-network providers.

26. Upon information and belief, GHI generally pays Plaintiff 80% of the UCR listed in the Fair Health database.

27. As set forth in detail below, however, the rate utilized by GHI is a mere fraction of the fair and customary rate charged by Plaintiff.

28. As a result, GHI's payment policy does not adequately compensate Plaintiff for its complex, emergent services because it does not reflect an accurate calculation of the UCR for the medical services provided by Plaintiff.

29. Upon information and belief, the UCR utilized by GHI is set too law because, *inter alia*, GHI wrongly (a) considers Brooklyn a distinct (and less expensive) market from

---

[1] CPT codes are codes used to describe medical treatment services for billing purposes. Fair Health, medical providers and insurers use these CPT codes to determine the reimbursement for a given service.

Manhattan; (b) claims that Plaintiff is not providing emergency services; and (c) rejects Plaintiff's billing for necessary and complementary radiological services that it performs in addition to its neurological services.

### III.     GHI Inadequately Reimburses Plaintiff

30.     The individuals described below are all patients of Plaintiff who are enrolled in GHI health plans that provide coverage for emergency services and out-of-network providers.

31.     In addition, each of the patients assigned his/her right to reimbursement for these emergency medical services to Plaintiff (and so Plaintiff is responsible for seeking compensation directly from GHI).

32.     N███████ P███████ ("N.P."):  In or around September/October 2014 and March through May 2015, N.P. underwent major lifesaving brain surgeries under the care of Plaintiff. He received, among other services, a therapeutic angiography, a vessel angiogram, a cerebral angiogram, and an emobilization of arterial venous malformation.

33.     The Health Insurance Claim Forms attached as <u>Exhibit A</u> detail the CPT codes for these procedures and identify Plaintiff's usual and customary charges for these codes.

34.     Plaintiff charged $239,278.76 for N.P.'s treatment, but was only paid $14,359.81 by GHI.  Thus, $224,918.95.40 remains owed to Plaintiff.

35.     K███ W███████ ("K.W."):  On or about September 19, 2015, K.W. underwent emergency procedures under the care of Plaintiff.  He received, among other services, a vessel angiogram, a therapeutic angiography, a cerebral arteriogram, and a left middle cerebral artery thrombectomy.

36.     The Health Insurance Claim Forms attached as <u>Exhibit B</u> detail the CPT codes for these procedures and identify Plaintiff's usual and customary charges for these codes.

37. Plaintiff charged $115,270.03 for K.W.'s treatment, but was only paid $2,686.00 by GHI.  Thus, $112.584.03 remains owed to Plaintiff.

38. R████ K████ ("R.K."):  In or around November 2014, R.K. underwent emergency procedures under the care of Plaintiff.  He received, among other services, a vessel angiogram, a cerebral angiogram, and an intracranial embolization of arteriovenous malformation.

39. The Health Insurance Claim Forms attached as Exhibit C detail the CPT codes for these procedures and identify Plaintiff's usual and customary charges for these codes.

40. Plaintiff charged $184,342.87 for R.K.'s treatment, but was only paid $10,052.35 by GHI.  Thus, $174,290.52 remains owed to Plaintiff.

41. G███ B████ ("G.B."):  On or about August 2, 2014, G.B. underwent emergency procedures under the care of Plaintiff.  He received, among other services, a cerebral arteriogram and an intra-arterial clot aspiration thombectomy.

42. The Health Insurance Claim Forms attached as Exhibit D detail the CPT codes for these procedures and identify Plaintiff's usual and customary charges for these codes.

43. Plaintiff charged $107,095.20 for G.B.'s treatment, but was only paid $2,550.50 by GHI.  Thus, $104,544.70 remains owed to Plaintiff.

44. E████ O████ ("E.O."):  On or about June 2, 2015, E.O. underwent emergency procedures under the care of Plaintiff.  He received, among other services, a vessel angiogram and a cerebral angiogram.

45. The Health Insurance Claim Forms attached as Exhibit E detail the CPT codes for these procedures and identify Plaintiff's usual and customary charges for these codes.

6

46. Plaintiff charged $75,718.58 for E.O.'s treatment, but was only paid $6,186 by GHI. Thus, $69,532.58 remains owed to Plaintiff.

47. S███ A█████ ("S.A."):  On or around January 2015, S.A. underwent emergency procedures under the care of Plaintiff. He received, among other services, a vessel angiogram and a cerebral angiogram.

48. The Health Insurance Claim Forms attached as Exhibit F detail the CPT codes for these procedures and identify Plaintiff's usual and customary charges for these codes.

49. Plaintiff charged $55,417.68 for S.A.'s treatment, but was only paid $10,044.16 by GHI. Thus, $45,373.52 remains owed to Plaintiff.

50. E████ B████ ("E.B."):  On or about August 5, 2015, underwent emergency procedures under the care of Plaintiff. She received, among other services, a fluoro guidance epidural injection and a lumbar puncture with fluoroscopic guidance.

51. The Health Insurance Claim Forms attached as Exhibit G detail the CPT codes for these procedures and identify Plaintiff's usual and customary charges for these codes.

52. Plaintiff charged $2,300 for E.B.'s treatment, but was only paid $500 by GHI. Thus, $1,800 remains owed to Plaintiff.

53. The fees charged by Plaintiff for the aforementioned emergency medical procedures are consistent and reasonable given the knowledge, expertise, and experience of Plaintiff's doctors and the severity of the conditions being treated.

54. GHI, on the other hand, by relying on an improperly low UCR, is inadequately compensating Plaintiff at a fraction of Plaintiff's reasonable rate.

55. Despite repeated requests by Plaintiff for GHI to adequately compensate it for the work it performed for GHI's members, GHI has refused to pay any money beyond wholly inadequate payments detailed above.

## FIRST CAUSE OF ACTION
(Unjust Enrichment)

56. Plaintiff repeats and realleges Paragraphs 1 through 55 as if fully set forth herein.

57. By setting an improperly low UCR for the complex, life-saving procedures provided by Plaintiff's expert and renowned providers, GHI has inadequately compensated Plaintiff for its services.

58. As a result, GHI has been unjustly enriched at the expense of Plaintiff.

59. Such unjust enrichment includes, but is not limited to, the retention of funds in its own accounts that should have been remitted to Plaintiff in exchange for emergency medical services performed by Plaintiff on GHI's insureds.

60. It is against equity and good conscience to permit GHI to retain monies that it owes to Plaintiff on behalf of its insureds.

61. Therefore, Plaintiff is entitled to restitution of any such payment retained by GHI in an amount to be proved at trial.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment against GHI for damages in an amount to be determined at trial, together with the costs associated with this action and reasonable attorneys' fees, and any other such damages that the Court may deem just and proper including punitive and consequential damages.

Dated:   November 21, 2016
         White Plains, New York

                                        **YANKWITT LLP**

                                    By: _____
                                        Russell M. Yankwitt
                                        Craig M. Cepler
                                        140 Grand Street, Suite 501
                                        White Plains, N.Y. 10601
                                        Tel: (914) 686-1500
                                        Fax: (914) 801-5930
                                        russell@yankwitt.com
                                        craig@yankwitt.com
                                        *Attorneys for Plaintiff*